# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. _____ |
| | ) |
| v. | ) |
| | ) **Count One** |
| **LEANN RAEJEANA TURNER**, (1) | ) **18 U.S.C. § 371** |
| a/k/a LeAnn R. Turner, | ) NMT 5 Years Imprisonment |
| [DOB: 07/16/1969], | ) NMT $250,000 Fine |
| | ) NMT 3 years Supervised Release |
| **CAROLE L. COLSON**, (2) | ) Class D Felony |
| [DOB: 08/30/1942], | ) |
| | ) **Counts Two through Thirty-Four** |
| **BRUCE Q. WILLIAMS**, (3) | ) **18 U.S.C. §§ 1343 and 2** |
| [DOB: 01/07/1969], | ) NMT 20 Years Imprisonment |
| | ) NMT $250,000 Fine |
| **ANTHONY E. HICKS**, (4) | ) NMT 5 Years Supervised Release |
| [DOB: 04/25/1972], | ) Class B Felony |
| | ) |
| **JAMES ARTHUR NASH, JR.**, (5) | ) **Count Thirty-Five** |
| a/k/a Art Nash, | ) **18 U.S.C. §§ 1957 and 2** |
| DOB: 03/19/1970], | ) NMT 10 Years Imprisonment |
| | ) NMT $250,000 Fine |
| **MARK P. BILLEY**, (6) | ) NMT 3 years Supervised Release |
| [DOB: 06/15/1973], | ) Class C Felony |
| | **)** |
| **ARMAN (NMI) NSHANIAN**, (7) | ) $100 Special Assessment On Each Count. |
| [DOB: 12/11/1975], | ) |
| | ) Restitution May Be Ordered. |
| **LINDA JOYCE HENRY JOHNSON**, (8) | ) |
| a/k/a Linda Henry, | ) |
| a/k/a Linda Johnson, | ) |
| [DOB: 06/09/1948], | ) |
| | ) |
| and | ) |
| | **)** |
| **ZELDA ANN JACKSON**, (9) | ) |
| a/k/a Zelda Ann Aberin, | ) |
| a/k/a Zelda Montgomery Aberin, | ) |
| [DOB: 11/29/1972], | ) |
| | ) |
| Defendants. | ) |

Summary of Charges:

      Count 1:          18 U.S.C. § 371
      Counts 2-34:     18 U.S.C. §§ 1343 and 2
      Count 35:        18 U.S.C. §§ 1957 and 2

| DEFENDANT | COUNTS | MAXIMUM IMPRISONMENT | MAXIMUM FINE |
|-----------|--------|---------------------|--------------|
| LEANN RAEJEANA TURNER (1) | 1-32, & 35 | 605 years | $7,750,000 |
| CAROLE L. COLSON (2) | 1-17, 33, & 34 | 365 years | $4,750,000 |
| BRUCE Q. WILLIAMS (3) | 1-19 | 325 years | $4,250,000 |
| ANTHONY E. HICKS (4) | 1, 20-22, & 25-27 | 265 years | $3,500,000 |
| JAMES ARTHUR NASH, JR. (5) | 1, 7-11 | 105 years | $1,500,000 |
| MARK P. BILLEY (6) | 1, 12-15, 33, & 34 | 125 years | $1,750,000 |
| ARMAN (NMI) NSHANIAN (7) | 1, 23 & 24 | 45 years | $750,000 |
| LINDA JOYCE HENRY JOHNSON (8) | 1, 28-32 | 105 years | $1,500,000 |
| ZELDA ANN JACKSON (9) | 1, 20-22 | 85 years | $ 1,250,000 |

# I N D I C T M E N T

THE GRAND JURY CHARGES THAT:

## COUNT ONE

### Introduction

1.      At all times material herein:

        a.      Defendant LEANN RAEJEANA TURNER, a/k/a LeAnn R. Turner, hereafter TURNER, a resident of Blue Springs, Missouri, was a real estate agent working with first one then another real estate company in the Kansas City, Missouri, metropolitan area.  She had a bank account in the name Dream Home Management LLC at Commerce Bank, Kansas City, Missouri.

        b.      Defendant CAROLE L. COLSON,  hereafter COLSON, a resident of Lake Worth, Florida, was a real estate broker doing business in the Kansas City metropolitan area as Carole Colson Real Estate.

        c.      Defendant BRUCE Q. WILLIAMS,  hereafter WILLIAMS, a resident of Kansas City, Kansas, was a mortgage loan officer at Advahome LLC in the Kansas City metropolitan area; he obtained mortgage loans for the purchase of properties; he also had an entity known as Williams Lawn Service.

        d.      Defendant ANTHONY E. HICKS, hereafter HICKS, a resident of Little Rock, Arkansas, was employed as a mortgage loan officer at Advahome LLC; he obtained mortgage loans for the purchase of properties; he also purchased one property as part of the scheme charged herein. He had an entity known as F&A Enterprises, Inc.

3

e. Defendant JAMES ARTHUR NASH, JR., a/k/a Art Nash, hereafter NASH, a resident of Corona, California, purchased two properties as part of the scheme charged herein. He had an entity known as San Kalpa Property Management.

f. Defendant MARK P. BILLEY, hereafter BILLEY, formerly a resident of Buena Park, California, purchased two properties as part of the scheme charged herein. He had an entity known as Trident Acquisitions and Management.

g. Defendant ARMAN (NMI) NSHANIAN, hereafter NSHANIAN, a resident of Corona, California, purchased one property as part of scheme charged herein. He had an entity known as A&M Management.

h. Defendant LINDA JOYCE HENRY JOHNSON, a/k/a Linda Henry, a/k/a Linda Johnson, hereafter JOHNSON, a resident of Corona, California, purchased one property as part of the scheme charged herein. She had an entity known as Ritam Property Management.

i. Defendant ZELDA ANN JACKSON, a/k/a Zelda Ann Aberin, a/k/a Zelda Montgomery Aberin, hereafter JACKSON, a resident of Westlake Village, California, was a real estate agent in the Los Angeles metropolitan area; she assisted, aided, and abetted her husband M.J. in the purchase of one property as part of the scheme charged herein. M.J. had an entity known as Pacific Rim Property Management.

j. Nations Title Agency, hereafter Nations Title, was engaged in the business of title insurance, real estate escrow, and closings. It had an office in Prairie Village, Kansas.

k. Capital Title Agency, hereafter Capital Title, was engaged in the business of title insurance, real estate escrow, and closings. It had an office in Independence, Missouri.

4

l.      First American Title Insurance Company, hereafter First American Title, was engaged in the business of title insurance, real estate escrow, and closings.  It had offices in Lee's Summit, Missouri, among other locations.

m.      Accredited Home Lenders, Inc., hereafter Accredited Home Lenders, was engaged in the business of making mortgage loans.  It had offices in West Chester, Ohio, and San Diego, California.

n.      First Franklin Financial Corporation, hereafter First Franklin Financial, was engaged in the business of making mortgage loans.  It had offices in Schaumburg, Illinois.

o.      First Magnus Financial Corporation, hereafter First Magnus Financial, was engaged in the business of making mortgage loans.  It had offices in Tucson, Arizona, and Overland Park, Kansas.

p.      Fremont Investment and Loan was engaged in the business of making mortgage loans.  It had offices in Anaheim, California.

q.      Long Beach Mortgage Company, hereafter Long Beach Mortgage, was engaged in the business of making mortgage loans.  It had offices in Englewood, Colorado.

r.      Meritage Mortgage Corporation, hereafter Meritage Mortgage, was engaged in the business of making mortgage loans.  It had offices in Beaverton, Oregon.

s.      MILA, Inc., doing business as Mortgage Investment Lending Associates, Inc., hereafter MILA, was engaged in the business of making mortgage loans.  It had offices in Mountlake Terrace, Washington.

t.      ResMae Mortgage Corporation, hereafter ResMae Mortgage, was engaged in the business of making mortgage loans.  It had offices in Irvine, California.

5

u.      Wilmington Finance, a Division of AIG Federal Savings Bank, hereafter Wilmington Finance, was engaged in the business of making mortgage loans.  It had offices in Plymouth Meeting, Pennsylvania.

## The Conspiracy and Its Object

2.      Beginning in or about early 2005, the exact date being unknown to the Grand Jury, and continuing through on or about August 4, 2006, at Lee's Summit, Blue Springs, Parkville, Independence, Liberty, and Oak Grove, in the Western District of Missouri, and elsewhere, defendants LEANN RAEJEANA TURNER, CAROLE L. COLSON, BRUCE Q. WILLIAMS, ANTHONY E. HICKS, JAMES ARTHUR NASH, JR.,  MARK P. BILLEY, ARMAN (NMI) NSHANIAN, LINDA JOYCE HENRY JOHNSON, and ZELDA ANN JACKSON, and others known and unknown to the Grand Jury, combined, confederated and agreed with each other and others known and unknown to the Grand Jury to obtain money from mortgage lenders and title companies, and to retain the money obtained, by means of material false and fraudulent pretenses, representations and promises, and by the concealment of material facts, and in the execution of the said scheme to commit offenses against the United States, that is, to knowingly and willfully transmit and cause to be transmitted in interstate commerce, wire communications, that is, facsimile communications, electronic mail, and wire transfers of funds, in furtherance of and for the purpose of executing a scheme to defraud, in violation of Title 18, United States Code, Sections 1343 and 2.

## Purpose of the Conspiracy

3.      The purpose of the conspiracy was to obtain money and other benefits by the sale and purchase of residences at inflated prices, that is, to obtain mortgage loan proceeds, given in reliance

6

on material false and fraudulent representations and promises, and by the concealment of material facts, for the personal financial and other benefit of the defendants.

**Fraudulent Scheme**

4.     It was part of the scheme that the defendants and coconspirators:

a.     agreed that new and used homes in the Kansas City metropolitan area could be purchased at inflated prices in order to obtain loan proceeds in excess of the actual sales prices;

b.     determined the actual sales prices wanted for the homes;

c.     agreed to structure the purchase of the homes in such a way that the buyers would receive money from the loan proceeds;

d.     solicited potential buyers, representing that the buyers would receive from the loan proceeds the difference between the actual sales prices and the inflated prices, less closing costs;

e.     agreed to purchase and obtain loans to purchase the homes in excess of the actual sales prices to be paid to the seller, by material false and fraudulent representations and promises, and omissions of facts;

f.     prepared and caused to be prepared loan applications and supporting documentation, containing material false and fraudulent representations and omissions of fact, all for submission to mortgage lenders;

g.     obtained and used fraudulent social security account numbers;

h.     submitted and caused to be submitted the material false and fraudulent loan applications and supporting documentation to mortgage lenders;

i.     created and caused to be created entities, and bank accounts in entity names, in order to receive loan proceeds;

7

j.      prepared and submitted to title companies closing the loans, material false and fraudulent documentation, and made material false and fraudulent material representations, in order to receive funds from the loan proceeds;

k.      caused mortgage lenders to approve the loan applications in reliance on the material false, fraudulent and misleading representations and omissions of facts contained in the mortgage loan applications and other documentation; and

l.      obtained and attempted to obtain personal financial and other benefits as a result of the scheme.

## Manner and Means

5.      It was part of the conspiracy that, beginning in or about early 2005, the exact date being unknown to the Grand Jury, and continuing through on or about August 4, 2006, defendants TURNER and COLSON and others known and unknown to the Grand Jury, agreed that TURNER and COLSON would sell homes, and arrange for the sale of homes, to coconspirators at inflated prices in order for the buyers and others to obtain from the loan proceeds the excess over the sales prices set by the sellers.

6.      It was further part of the conspiracy that defendants TURNER and COLSON listed and arranged the homes for sale at inflated sales prices.

7.      It was further part of the conspiracy that defendants TURNER and COLSON, and other coconspirators, solicited potential buyers, representing that the buyers would receive from the loan proceeds the difference between the actual sales prices and the inflated prices, less closing costs.

8.      It was further part of the conspiracy that defendant TURNER and COLSON sold homes and arranged the sale of homes to buyers at inflated prices, structuring the sales in a way that

8

the buyers would receive money from the loan proceeds without the knowledge or consent of the lenders.

9. It was further part of the conspiracy that defendants WILLIAMS, HICKS, NASH, BILLEY, NSHANIAN, JOHNSON, and JACKSON, and other coconspirators, purchased and obtained loans to purchase, and caused to be purchased and obtained loans to purchase, the homes in excess of the actual sales prices to be paid to the sellers, by material false and fraudulent representations and promises, and omissions of fact.

10. It was further part of the conspiracy that the defendants and other coconspirators prepared and caused to be prepared loan applications and supporting documentation containing material false and fraudulent representations and omissions of fact, all for submission to mortgage lenders, to induce the mortgage lenders to approve the applications and lend funds for the purchase of the homes.

11. It was further part of the conspiracy that the defendants and other coconspirators submitted and caused to be submitted to the mortgage lenders the false and fraudulent loan applications and supporting documentation.

12. It was further part of the conspiracy that coconspirators obtained, used, and caused to be used, false and fraudulent social security account numbers in order to obtain loans to purchase homes.

13. It was further part of the conspiracy that, in order to receive money from the proceeds of the loans, defendants TURNER, HICKS, NASH, BILLEY, NSHANIAN, JOHNSON, and JACKSON, and other coconspirators, created and caused to be created false and fictitious entities,

Case 4:10-cr-00331-DGK   Document 1   Filed 11/19/10   Page 9 of 39

and opened and caused to be opened bank accounts in the names of those false and fictitious entities, in order to conceal from the lenders that the borrowers were receiving proceeds of the loans.

14.     It was further part of the conspiracy that defendants TURNER, COLSON, HICKS, NASH, BILLEY, NSHANIAN, JOHNSON, and JACKSON,  and other coconspirators, created and caused to be created false and fictitious invoices, called Irrevocable Demands for Payment, and other documentation which were submitted to title companies closing the loans, and to mortgage lenders, representing that the entities had provided work and services for which they were entitled to receive loan proceeds, and concealing that payments based on the invoices would be received by the borrowers.

15.     It was further part of the conspiracy that defendants and other coconspirators prepared and submitted, and caused to be prepared and submitted, to title companies closing the loans, and to mortgage lenders, material false and fraudulent documentation, and made false and fraudulent material representations, in order to receive funds from the loan proceeds.

16.     It was further part of the conspiracy that the defendants and other coconspirators caused mortgage lenders to approve the loan applications in reliance on the material false, fraudulent and misleading representations and omissions of facts contained in the mortgage loan applications and supporting documentation.

17.     It was further part of the conspiracy that the defendants and other coconspirators obtained financial and other benefits as a result of the scheme.

### Overt Acts

18.     In furtherance of and to effect the objectives of the conspiracy, and to accomplish its purposes and objectives, the defendants committed and caused to be committed the following overt

10

acts, among others, in Lee's Summit, Blue Springs, Parkville, Independence, Liberty, Oak Grove, and in the Kansas City metropolitan area, in the Western District of Missouri, and elsewhere:

a.      In or before early 2005, defendant TURNER told J.H. that she could get approximately $100,000 cash back for each house buyers purchased from her, that she listed and sold the homes at prices greater than the sellers wanted from the homes and the difference between the sellers' sales prices and the loan proceeds went to the buyers.

b.      In or about June 2005, defendant TURNER and J.H. agreed that J.H. would purchase four homes from TURNER, that the sales prices would be greater than the prices the sellers wanted for the homes, that J.H. would obtain loans for the greater sales prices, and that J.H. would receive back at and after closing the difference between the prices the sellers wanted for the homes and the loan amounts.

*5532 NE Northgate Crossing, Lee's Summit, Missouri*

c.      On or about June 22, 2005, defendant TURNER sent by email to J.H. pictures of 5532 NE Northgate Crossing, Lee's Summit, Missouri.

d.      On or about June 22, 2005, J.H. signed a Residential Real Estate Contract dated June 22, 2005, offering to purchase 5532 NE Northgate Crossing, Lee's Summit, Missouri, for $530,000.

e.      On or about June 27, 2005, defendant WILLIAMS sent and caused to be sent by fax a copy of the Residential Real Estate Contract from his office in Missouri to the title company in Kansas.

f.      On or about July 12, 2005, J.H. sent and caused to be sent by fax to defendants TURNER and WILLIAMS a copy of a blank invoice, referred to as an "Irrevocable Demand for

11

Payment," with the message, "This is how the demand should be written including all the information, which will make for a totally secure transaction and no head aches (sic)."

       g.     On or about July 21, 2005, defendant TURNER obtained and caused to be obtained on an "Irrevocable Demand for Payment," signatures of the sellers of 5532 NE Northgate Crossing, Lee's Summit, Missouri, showing $100,000 to be paid to Dream Home Management.

       h.     On or about July 21, 2005, a person unknown to the Grand Jury sent by fax from Lee's Summit, Missouri, to J.H. in California a copy of an "Irrevocable Demand for Payment," with signatures of the sellers of 5532 NE Northgate Crossing, Lee's Summit, Missouri, showing $100,000 to be paid to Dream Home Management.

       i.     On or before July 26, 2005, defendants TURNER, WILLIAMS, and J.H. submitted and caused to be submitted to MILA loan applications for loans totaling $530,000.00 for the purchase of 5532 NE Northgate Crossing, Lee's Summit, Missouri, which loan applications contained false and fraudulent representations and omissions, including a false social security account number, a false address, false income and liability information, and a false representation that J.H. would occupy the property, and false representations of the condition of the home, and false representations regarding the use of proceeds.

       j.     On or about July 26, 2005, MILA wired money for closing.

       k.     On or about July 26, 2005, as part of the loan closing, J.H. signed documents containing false and fraudulent representations and omissions, including a false social security account number, address, income, liabilities, occupancy of the property, condition of the home, and use of the proceeds.

l.      On or about July 26, 2005, as part of the loan closing, Nations Title disbursed $100,000 to Dream Home Management by wire transfer and $15,340 to Advahome by check.

*1848 Bent Oaks Drive, Liberty, Missouri*

m.      On or about July 7, 2005, defendant TURNER sent by fax to an unknown recipient a copy of a Residential Real Estate Contract signed by J.H., offering to purchase 1848 Bent Oaks Drive, Liberty, Missouri, for $980,000.

n.      On or about July 24, 2005, defendant TURNER caused an employee of a title company to sent by fax to J.H. a copy of signed "Irrevocable Demands for Payment," for payment to Dream Homes Management of $100,000 and to Alpha/Omega Properties of $11,220.86.

o.      On or before July 26, 2005, defendants TURNER and J.H. submitted and caused to be submitted to First Franklin Financial loan applications for loans totaling $980,000.00 for the purchase of 1848 Bent Oaks Drive, Liberty, Missouri, which loan applications contained false and fraudulent representations and omissions, including a false social security account number, a false address, false income and liability information, and a false representation that R.B. would occupy the property, and false representations of the condition of the home, and false representations regarding the use of proceeds.

p.      On or about August 24, 2005, as part of the loan closing, J.H. signed documents containing false and fraudulent representations and omissions, including a false social security account number, address, income, liabilities, condition of the home, and use of the proceeds.

q.      On or about August 25, 2005, First Franklin Financial sent $783,234.98 to the account of Northland Title Services at Bank of America.

Case 4:10-cr-00331-DGK   Document 1   Filed 11/19/10   Page 13 of 39

r. On or about August 25, 2005, in connection with the loan closing, the title company disbursed $100,000 to Dream Homes Management, $11,074.16 to Alpha/Omega Properties; and $20,000 to Premier Real Estate.

*22816 E. Ashford Court, Blue Springs, Missouri*

s. On or about July 28, 2005, J.H. signed a Residential Real Estate Contract offering to purchase 22816 E. Ashford Court, Blue Springs, Missouri, for $635,000.

t. On or about July 29, 2005, defendant COLSON sent and caused to be sent by fax from her office in Missouri to Nations Title Agency in Kansas, two Irrevocable Demands for Payment for Dream Home Management in the amount of $100,000 and Williams Lawn Service in the amount of $16,050.

u. On or before August 31, 2005, defendants TURNER, COLSON, WILLIAMS, and J.H. submitted and caused to be submitted to Meritage Mortgage loan applications for loans totaling $635,000.00 for the purchase of 22816 E. Ashford Court, Blue Springs, Missouri, which loan applications contained false and fraudulent representations and omissions, including a false social security account number, a false address, false income and liability information, and a false representation that J.H. would occupy the property, and false representations of the condition of the home, and false representations regarding the use of proceeds.

v. On or about August 31, 2005, as part of the loan closing, J.H. signed documents containing false and fraudulent representations and omissions, including a false social security account number, address, income, liabilities, occupancy of the property, condition of the home, and use of the proceeds.

14

w.        On or about August 31, 2005, defendant TURNER sent a fax to defendant COLSON advising that $7,286.04 should be added to the lawn service payment, making it $23,336.04 instead of $16,050; to have TURNER's seller sign; and to send a fax. Defendant TURNER sent a copy of the fax to Nations Title Agency.

x.        On or about August 31, 2005, Meritage Mortgage sent a wire transfer of $638,163.89 to US Bank, for credit to the account of Nations Title.

y.        On or about September 2, 2005, in connection with the closing, Nations Title disbursed loan proceeds, including $100,000 to Dream Home Management, $23,336.04 to Williams Lawn Service, $12,497.50 to defendant TURNER's real estate company, $12,497.50 to Carole Colson Real Estate, and $10,660 to Advahome.

*6203 National, Parkville, Missouri*

z.        On or before August 9, 2005, J.H. signed a Residential Real Estate Contract dated August 9, 2005, offering to purchase 6203 National, Parkville, Missouri, for $810,000.

a1.        On or about August 12, 2005, defendant WILLIAMS sent and caused to be sent by fax to Nations Title a copy of the Residential Real Estate Contract.

b1.        On or before August 25, 2005, defendants TURNER and WILLIAMS, and J.H., caused be submitted Fremont Investment and Loans loan applications for loans totaling $810,000.00 for the purchase of 6203 National, Parkville, Missouri, which loan applications contained false and fraudulent representations and omissions, including a false social security account number, a false address, false employment, a false representation that he would occupy the property, and false representations regarding the use of proceeds.

c1.     On or about August 30, 2005, defendant TURNER sent and caused to be sent by fax a contract amendment reducing the purchase price from $810,000 to $785,000.

d1.     On or about August 30, 2005, defendant TURNER sent and caused to be sent by two signed Irrevocable Demands for Payment, signed by the seller, authorizing payment to Dream Homes Management in the amount of $100,000 and to Williams Lawn Service in the amount of $27,000.

e1.     On or about August 31, 2005, Fremont Investment and Loan sent by wire $783,162.67 to US Bank, to the account of Nations Title.

f1.     On or about August 31, 2005, as part of the loan closing, J.H. signed documents containing false and fraudulent representations and omissions, including a false social security account number, address, employment, occupancy of the property, and use of the proceeds.

g1.     On or about September 2, 2005, as part of the loan closing, Nations Title disbursed $100,000 to Dream Home Management and $27,000 to Williams Lawn Service.

*3225 Thornbird, Independence, Missouri*

h1.     On or about October 31, 2005, K.D. set up a business in the name ERI, also known as ERI Property Management, and opened a bank account in that name, in order to receive loan proceeds from the purchase of homes.

i1.     On or about November 4,  2005, defendant TURNER sent by fax to J.H. a copy of a contract for 3225 Thornbird, Independence, Missouri; defendant TURNER was shown as the buyer's agent and defendant COLSON as the seller's agent.

j1.     On or about November 4, 2005, K.D. signed the contract.

16

k1.     On or about November 8, 2005, defendant COLSON sent and caused to be sent by fax from 816-224-5606 to Nations Title, a completed copy of the contract, signed and dated November 8, 2005, and copies of Irrevocable Demands for Payment, signed and dated November 8, 2005, for payment to ERI Management in the amount of $100,000.

l1.     On or about November 11, 2005, defendant TURNER sent and caused to be sent by fax from 816-224-5606 to J.H., a completed copy of the contract, signed and dated November 8, 2005; a loan preapproval letter signed by defendant WILLIAMS, and a copy of an Irrevocable Demand for Payment to ERI Property Management in the amount of $100,000, and to Dream Home Management in the amount of $52,000.

m1.     On or about November 22, 2005, defendants TURNER and COLSON sent and caused to be sent by fax from 816- 224-5605 to Nations Title in Kansas a commission statement for the sale of 3225 Thornbird, Independence, Missouri.

n1.     On or about December 5, 2005, MILA caused to be sent by wire transfer $467,672.22 and $118,057.31 to fund the loans for the purchase of 3225 Thornbird, Independence, Missouri.

o1.     On or about December 5, 2005, as part of the loan closing, K.D. signed documents containing false and fraudulent representations and omissions, including address, employment, occupancy of the property, and use of the proceeds.

p1.     On or about December 6, 2005, as part of the loan closing, Nations Title disbursed $100,000 to ERI Property Management, $52,000 to Dream Homes Management, $21,495 to Carole Colson Real Estate, and $2,879.60 to Advahome.

*721 NE Lake Pointe Drive, Lee's Summit, Missouri*

q1.    In or about November 2005, defendant TURNER told R.B. that if he purchased 721 NE Lake Pointe Drive, Lee's Summit, Missouri, he would receive money back from the loan proceeds and an investor would purchase it from R.B. in a short period of time.

r1.    On or about November 18, 2005, defendant WILLIAMS sent and caused to be sent by fax to Nations Title a copy of a contract for R.B. to purchase 721 NE Lake Pointe Drive for $767,247.

s1.    On or about December 21, 2005, defendant TURNER sent and caused to be sent by fax to Nation's Title a commission statement in connection with the sale of the property.

t1.    On or about December 21, 2005, defendant TURNER sent and caused to be sent by fax from Carol Colson Real Estate to Nations Title an Irrevocable Demand for Payment to Cap One in the amount of $125,000, signed by the seller and dated November 16, 2005.

u1.    On or about December 21, 2005, Fremont Investment and Loan sent wire transfers of $611,390.10 and $152,705.94 to Nations Title.

v1.    On or about December 21, 2005, as part of the loan closing, R.B. signed documents containing false and fraudulent representations and omissions, including a false social security account number, address, income, liabilities, occupancy of the property, condition of the home, and use of the proceeds.

w1.    On or about December 22, 2005, as part of the loan closing, Nations Title disbursed $125,000 to Cap One, $18,597 to Carole Colson Real Estate, and $15,344 to Advahome.

18

*5111 S Brittany Drive, Blue Springs, Missouri*

        x1.     On or about October 4, 2005, defendant NASH created a fictitious business in California in the name San Kalpa Property Management, in order to receive money back from loan proceeds for the purchase of homes.

        y1.     On or about October 26, 2005, defendant NASH sent and caused to be sent by fax to J.H. bank account information about San Kalpa Property Management.

        z1.     On or about November 9, 2005, defendant WILLIAMS sent and caused to be sent by fax from Advahome in Missouri to Nations Title in Kansas copies of Residential Real Estate Contracts for defendant NASH's purchase of 5111 S. Brittany Drive and 5121 S. Brittany Drive, Blue Springs, Missouri.

        a2.     On or about November 3, 2005, defendant TURNER sent and caused to be sent by fax to J.H. completed copies of a contract, loan preapproval letter, and two Irrevocable Demands for Payment, showing payments to San Kalpa Property Management of $100,000 and to Alpha/Omega Properties of $25,000.

        b2.     On or before November 29, 2005, defendant NASH signed documents containing false and fraudulent representations and omissions, including false marital status, employment, income, occupancy of the property, and use of the proceeds.

        c2.     On or about December 22, 2005, J.H. sent an email to defendant WILLIAMS advising that WILLIAMS could put in the dates of employment for Nash on a letter which stated that Nash was employed by Infinite Link Communications as a consultant, then part time (1999), then full time (2000).

d2.     In or about December 21, 2005, defendant TURNER sent and caused to be sent by fax to Nation's Title two Irrevocable Demands for Payment dated November 26, 2005, advising that the sellers agreed to pay $100,000 to San Kalpa and Alpha/Omega $25,000.

e2.     On or about December 28, 2005, defendant TURNER sent and caused to be sent by fax to Nation's Title a commission statement in connection with the sale of the property.

f2.     On or about December 28, 2005, MILA sent by fax to Nations Title a copy of defendant NASH's loan applications in the amounts of $432,517 and $108,129.

g2.     On or about December 28, 2005, as part of the loan closing, defendant NASH signed documents containing false and fraudulent representations and omissions, including false marital status, employment, income, occupancy of the property, and use of the proceeds.

h2.     On or about December 29, 2005, MILA sent by wire transfer to Nations Title $426,936.91 and $108,035.83.

i2.     On or about December 29, 2005, as part of the loan closing, Nations Title disbursed $100,000 to San Kalpa Property Management, $25,000 to Alpha Omega Properties, $19,995 to Carole Colson Realty, and $6,987.76 to Advahome.

*5121 S Brittany Drive, Blue Springs, Missouri*

j2.     On or about November 3, 2005, defendant TURNER sent and caused to be sent by fax from 816- 224-5606 to J.H. in California a copy of a Residential Real Estate Contract for defendant NASH to purchase 5121 S. Brittany Drive, Blue Springs, Missouri, for $520,047.

k2.     On or about November 9, 2005, defendant TURNER sent and caused to be sent by fax from 816- 224-5606 to J.H. in California a copy of a completed copy of a contract and two Irrevocable Demands for Payment, showing payments to San Kalpa Property Management of

20

$100,000 and to Alpha/Omega Properties of $25,000; both Irrevocable Demands for Payment were signed by the seller and dated November 26, 2005.

l2.　　On or about December 22, 2005, J.H. sent an email to defendant WILLIAMS advising that WILLIAMS could put in the dates of employment for Nash on a letter which stated that Nash was employed by Infinite Link Communications as a consultant, then part time (1999), then full time (2000).

m2.　　On or about January 12, 2006, defendant TURNER sent and caused to be sent by fax from 816- 224-5606 to Nation's Title in Kansas a commission letter and two Irrevocable Demands for Payment dated November 26, 2005, advising that the sellers agreed to pay $100,000 to San Kalpa Property Management and $25,000 to Alpha/Omega Properties.

n2.　　On or about January 12, 2006, Wilmington Finance sent by wire transfer to Nations Title $413,591.68 and $102,284.86.

o2.　　On or about January 12, 2006, as part of the loan closing, defendant NASH signed documents containing false and fraudulent representations and omissions, including employment, income, assets, liabilities, occupancy of the property, and use of the proceeds.

p2.　　On or about January 16, 2006, as part of the loan closing, Nations Title disbursed $100,000 to San Kalpa Property Management, $25,000 to Alpha Omega Properties, $18,995 to Carole Colson Realty, and $9,000 to Advahome.

*721 NE Seabrook Circle, Lee's Summit, Missouri*

q2.　　On or about December 8, 2005, defendant BILLEY created a fictitious business in California in the name Trident Acquisitions and Management, and opened a bank account in that name, in order to receive money back from loan proceeds for the purchase of homes.

21

r2.     On or about December 9, 2005, defendant TURNER sent and caused to be sent by fax from Missouri to J.H. in California a copy of a contract for defendant BILLEY's purchase of 721 NE Seabrook Circle, Lee's Summit, Missouri, for $736,347, and a copy of a Buyer Agency contract between TURNER and BILLEY.

s2.     On or about December 9, 2005, defendant TURNER sent and caused to be sent by fax from Missouri to J.H. in California two unsigned Irrevocable Demands for Payment: one for the payment of $100,000 to Trident Acquisitions and Management, and one for $25,000 to Alpha/Omega Properties.

t2.     On or about December 14, 2005, defendant TURNER sent and caused to be sent by fax from Missouri to J.H. in California a copy of a signed contract for defendant BILLEY to purchase of 721 NE Seabrook Circle, Lee's Summit, Missouri, for $736,347; the contract was signed and dated December 12, 2005 by the seller and December 10, 2005 by BILLEY.

u2.     On or about January 12, 2006, defendant TURNER sent and caused to be sent by fax from Carole Colson Real Estate in Missouri to Nations Title in Kansas a commission statement for 721 NE Seabrook Circle.

v2.     On or about January 12, 2006, defendant BILLEY signed documents containing false and fraudulent representations and omissions, including employment, income, occupancy of the property, and use of the proceeds.

w2.     On or about January 12, 2006, Fremont Investment and Loans sent by wire transfer to Nations Title $585,175.30 and $146,336.00.

22

x2.     On or about January 13, 2006, defendant WILLIAMS sent by fax from 816-457-6333 to Nations Title in Kansas two copies of a page of loan applications signed by defendant BILLEY, dated January 12, 2006.

y2.     On or about January 16, 2006, as part of the loan closing, Nations Title disbursed $125,000 to Dream Homes, $17,697 to Carole Colson Real Estate, and $13,550 to Advahome.

*1510 Timber Ridge Drive, Liberty, Missouri*

z2.     On or before December 27, 2005, defendant TURNER proposed that R.B. purchase 1510 Timber Ridge Drive, Liberty, Missouri, for $860,565; she told him he would receive cash back from the loan proceeds.

a3.     On or about December 27, 2005, defendant TURNER sent by fax from Carole Colson Real Estate a signed copy of a Residential Real Estate Contract for the purchase by R.B. of 1510 Timber Ridge Drive for $860,565.  A handwritten note at the bottom of the page referenced $150,000 to CAP and $15,000 for seller closing.

b3.     On or about February 6, 2006, R.B. signed documents containing false and fraudulent representations and omissions, including Social Security Number, address, income, assets, liabilities, occupancy of the property, and use of the proceeds.  He also signed a Residential Real Estate Contract Amendment, reducing the purchase price to $685,000.

c3.     On or about February 6, 2006, defendant TURNER sent and caused to be sent by fax from Carole Colson Real Estate in Missouri to Nations Title in Kansas a commission statement for 1510 Timber Ridge Drive.

23

d3.     On or about February 6, 2006, defendant TURNER sent and caused to be sent from Carole Colson Real Estate in Missouri to Nations Title in Kansas two Irrevocable Demands for Payment: one for $100,000 to Cap One and one for $24,435 to Dream Homes Management, Commerce Bank.

e3.     On or about February 6, 2006, Long Beach Mortgage sent by wire transfer to Nations Title $544,465.45 and $135,785.83.

f3.     On or about February 6, 2006, as part of the loan closing, Nations Title disbursed $100,000 to Cap One, $31,500 to Carole Colson Real Estate, $24,435 to Dream Homes, and $16,940 to Advahome.

*708 NE Dick Howser Court, Lee's Summit, Missouri*

g3.     On or before January 10, 2006, defendant TURNER proposed that R.B. purchase 708 NE Dick Howser Court, Lee's Summit, Missouri, for $999,900; she told him he would receive cash back from the loan proceeds.

h3.     On or about January 10, 2006, defendant TURNER sent by fax from Carole Colson Real Estate to defendant WILLIAMS at Advahome, a signed copy of a Residential Real Estate Contract for the purchase by R.B. of 708 NE Dick Howser Court, Lee's Summit, Missouri, for $999,900.

i3.     On or about January 11, 2006, defendant WILLIAMS sent by fax from Advahome in Missouri to Nations Title in Kansas a signed copy of a Residential Real Estate Contract for the purchase by R.B. of 708 NE Dick Howser Court, Lee's Summit, Missouri, for $999,900.

24

j3.     On or about February 6, 2006, R.B. signed documents containing false and fraudulent representations and omissions, including Social Security Number, address, income, assets, liabilities, occupancy of the property, and use of the proceeds.

k3.     On or before February 6, 2006, defendant TURNER provided and caused to be provided to Capital Title an Irrevocable Demand for Payment for $100,000 to Cap One.

l3.     On or about February 6, 2006, Meritage Mortgage sent by fax from 503-443-9021 to Capital Title in Missouri a copy of R.B.'s first and second mortgage loan applications.

m3.     On or about February 6, 2006, Meritage Mortgage sent by wire transfer to Blue Ridge Bank and Trust, Missouri, for deposit to Capital Title's account, $794,513.55.

n3.     On or about February 7, 2006, Meritage Mortgage sent by wire transfer to Blue Ridge Bank and Trust, Missouri, for deposit to Capital Title's account, $198,546.10.

o3.     On or about February 14, 2006, as part of the loan closing, Capital Title disbursed $100,000 to Cap One and $18,116.55 to Advahome.

*1013 SW Trail Ridge Lane, Lee's Summit, Missouri*

p3.     In or before January 2006, defendant JACKSON referred M.J. to J.H. regarding the purchase of property to obtain cash back.

q3.     On or about January 27, 2006, defendant JACKSON and M.J. incorporated Pacific Rim Property Management, Inc., with defendant JACKSON and M.J. on the board of directors. They obtained a certificate of qualification in California to transact business in California.

r3.     On or about January 29, 2006, defendant JACKSON caused M.J. to send by fax to J.H. a completed, handwritten loan application, which showed M.J. worked for Infinite Link Communications for eight (8) years.

25

s3.     On or about January 30, 2006, defendant JACKSON sent and caused to be sent an email inquiring whether J.H. received the loan application, which showed M.J. worked for Infinite Link Communications for eight (8) years.

t3.     On or about February 1, 2006, defendant JACKSON caused to be sent to J.H. a Residential Real Estate Contract for M.J. to purchase 1013 SW Trail Ridge Lane, Lee's Summit, Missouri, for $689,900.

u3.     On or about February 18, 2006, defendant TURNER sent and caused to be sent by fax from 816- 554-6351 Missouri to Nations Title in Kansas, a Residential Real Estate Contract for 1013 SW Trail Ridge Lane, Lee's Summit, Missouri, for $689,900, signed by M.J. and dated February 1, 2006, and signed by the seller and dated February 18, 2006; and an Irrevocable Demand for Payment for $100,000 to Pacific Rim Property Management and $25,000 to Alpha Omega Properties.

v3.     On or about February 20, 2006, defendant JACKSON sent an email to J.H. inquiring how the projects were coming along, and asking J.H. to call her to talk money.

w3.     On or about February 28, 2006, defendant TURNER sent and caused to be sent by fax from her real estate company in Missouri to Nations Title in Kansas a commission statement.

x3.     On or about March 1, 2006, defendant HICKS sent an email to J.H. asking that J.H. cut and paste a letter onto his standard letterhead and fax it to defendant HICKS that night; the attached letter was to M.J., advising he was being relocated to the Midwest Region and was going to be working out of the home office in Kansas City, Missouri, starting March 15, 2006.

26

y3.     On or about March 12, 2006, defendant JACKSON sent an email to J.H. asking for an update on M.J.'s purchase of 1013 SW Trail Ridge Lane and inquiring about the status of others.

z3.     On or about March 14, 2006, M.J. signed documents containing false and fraudulent representations and omissions, including employment, income, occupancy of the property, and use of the proceeds.

a4.     On or about March 15, 2006, ResMae Mortgage sent by wire transfer to Nations Title $554,537.35 and $137,246.98.

b4.     On or about February 14, 2006, as part of the loan closing, Nations Title disbursed $100,000 to Pacific Rim Properties, $25,000 to Alpha Omega, $16,497 and $5,499 to defendant Turner's real estate company, and $12,418.20 to HomeSmartz.

*4231 NE Edmonson Court, Lee's Summit, Missouri*

c4.     In or about February 3, 2006, defendant NSHANIAN set up A&M Management, and opened a bank account in that name, in order to receive loan proceeds back from the purchase of homes.

d4.     On or about February 6, 2006, defendant NSHANIAN caused M.N. to send a fax to J.H., attaching completed loan applications for defendant and M.N.; employment was falsely shown to be with Infinite Link Communications. On the cover page of the fax M.N. wrote she did not fill in her position and title, and did not put defendant NSHANIAN's years with company as J.H. was to handle that.

e4.     On or about April 6, 2006, defendant TURNER sent by fax from Missouri to J.H. in California a Residential Real Estate Contract for the purchase by defendant NSHANIAN of

27

4231 NE Edmonson Court, Lee's Summit, Missouri, for $750,000, and Irrevocable Demands for Payment to A&M Management of $100,000 and Alpha/Omega Properties of $38,000.

f4.     On or about April 10, 2006, defendant TURNER sent and caused to be sent by fax from Missouri to Capital Title in Kansas a Residential Real Estate Contract for the purchase by defendant NSHANIAN of 4231 NE Edmonson Court, Lee's Summit, Missouri, for $750,000, signed by Nshanian.

g4.     On or about April 14, 2006, defendant TURNER sent and caused to be sent by fax from 816- 985-5844 to Capital Title a copy of Irrevocable Demands for Payment to A&M Management of $100,000 and to Alpha/Omega Properties of $38,000.

h4.     On or about April 14, 2006, defendant TURNER sent and caused to be sent by fax from 816- 985-5844 to Capital Title a commission letter from her real estate company for $43,250.

i4.     On or about April 27, 2006, defendant NSHANIAN signed documents containing false and fraudulent representations and omissions, including marital status, employment, income, assets, occupancy of the property, and use of the proceeds.

j4.     On or about April 28, 2006, Fremont Investment and Loan sent by wire transfer to Capital Title $604,509.80 and $149,562.61.

k4.     On or about April 28, 2006, as part of the loan closing, Capital Title disbursed $100,000 to A&M Management, $38,000 to Alpha Omega Properties, and $43,250 to defendant Turner's real estate company.

28

*4300 NE Hoit Drive, Lee's Summit, Missouri*

l4.     On or about May 18, 2005, defendant HICKS incorporated F&A Enterprises in the State of Missouri.

m4.     On or about March 13, 2006, defendant HICKS signed a Residential Real Estate Contract to purchase 4300 NE Hoit Drive, Lee's Summit, Missouri, for $650,000; defendant TURNER was the real estate agent on the contract.

n4.     On or about April 28, 2006, a loan application for defendant HICKS' purchase of 4300 NE Hoit Drive, Lee's Summit, Missouri, was sent by fax from 816- 734-4240.

o4.      On or about April 28, 2006, defendant HICKS signed loan documents containing false and fraudulent representations and omissions, including Social Security Number, residence, employment, income, occupancy of the property, and use of the proceeds.

p4.     On or about April 28, 2006, Nations Title disbursed loan proceeds, including $100,000 to F&A Enterprises.

*1813 SW Summit Valley Drive, Lee's Summit, Missouri*

q4.     In or about October 13, 2005, defendant JOHNSON set up Ritam Property Management, and opened a bank account in that name, in order to receive loan proceeds back from the purchase of homes.

r4.     On or about February 2, 2006, defendant JOHNSON sent a fax to J.H., including her name and the name Ritam Property Management, with an address in Chino Hills, California.

s4.     On or about March 1, 2006, defendant TURNER sent or caused to be sent a fax from 816- 554-6341 to J.H., with a copy of an unsigned contract for defendant JOHNSON to

29

purchase 1813 SW Summit Valley Drive for $579,900, and two Irrevocable Demands for Payment: one for $100,000 (no name shown) and one for $40,000 to Alpha Omega.

t4.     On or about March 5, 2006, defendant JOHNSON emailed J.H. requesting a picture of the house and the address.

u4.     On or about March 30, 2006, defendant TURNER sent and caused to be sent from her real estate company in Missouri to Capital Title in Kansas, a signed Residential Real Estate Contract for defendant JOHNSON to purchase 1813 SW Summit Valley Drive, Lee's Summit, Missouri, for $579,900.

v4.     On or about April 6, 2006, defendant JOHNSON sent by fax to J.H. a copy of a signed loan application and Borrower's Certification dated April 6, 2006.  Defendant filled out the name and residence information on page one of the loan application but left the rest blank.

w4.     On or about April 25, 2006, defendant TURNER sent faxes from 816-985-8448 to Capital Title in Kansas, showing the sellers agreed to pay $100,000 to Ritam Property Management and $40,000 to Alpha/Omega.

x4.     On or about May 26, 2006, defendant JOHNSON signed documents containing false and fraudulent representations and omissions, including residence, employment, income, occupancy of the property, and use of the proceeds.

y4.     On or about May 30, 2006, Accredited Home Lenders sent by wire transfer $471,482.88 and $115,157.96 to Capital Title's bank for credit to its account.

z4.     On or about May 30, 2006, as part of the loan closing, Capital Title disbursed $100,000 to Ritam Property Management, $40,000 to Alpha Omega Properties, and $33,794.50 to defendant TURNER's real estate company.

30

*2801 S. Fields Road, Oak Grove, Missouri*

a5.     On or about April 6, 2006, defendant COLSON emailed J.H. pictures of the property at 2801 S. Fields Road, Oak Grove, Missouri, along with information about it.

b5.     On or about April 25, 2006, defendant BILLEY signed a New Homes Sale Contract for the purchase of 2801 S. Fields Road, Oak Grove, Missouri, for $770,000; defendant COLSON was listed as both the listing and selling broker.

c5.     On or about July 5, 2006, defendant BILLEY signed a letter stating he had worked for Infinite Link Communications, in California, and had been transferred to the Missouri branch, working for the company for eight years.

d5.     On or about August 1, 2006, defendant BILLEY and the seller signed an Amendment to the sale contract, lowering the price to $650,000.

e5.     On or about August 1, 2006, defendant BILLEY signed documents containing false and fraudulent representations and omissions, including residence, employment, income, occupancy of the property, and use of the proceeds.

f5.     On or about August 1, 2006, defendant COLSON sent and caused to be sent by fax to First American Title a commission statement and two Irrevocable Demands for Payment, one for Trident Acquisition Management for $90,000 and one for Dream Home Management for $35,000.

g5.     On or about August 2, 2006, First Magnus Financial sent checks dated August 1, 2006, for $525,515.56 and $129,943.33, to fund the loans.

h5.     On or about August 4, 2006, Commerce Bank, in Missouri, acting on the instructions of First American Title, wired $90,000 to Bank of America in California, for credit to

the account of Trident Acquisition Management and $35,000 to Bank of the West in California, for credit to the account of Dream Home Management.

*Summary*

i5.    In reliance on the material false, fraudulent, and misleading representations and omissions of facts contained in the mortgage loan applications and supporting documentation, mortgage lenders approved and made loans in the approximate total amount of $11,092,886.  From that total, unbeknownst to the lenders, buyers received approximately $2,006,845.20.

*Wire Transmissions and Transfers of Funds*

j5.    The Grand Jury incorporates by reference as additional overt acts the wire transmissions and transfers of funds set forth in Counts Two through Thirty-Four.  The wire transmissions and transfers of funds were in interstate commerce, in furtherance of and as a result of the conspiracy and scheme to defraud, described above.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO through THIRTY-FOUR

1.    The Grand Jury incorporates by reference paragraphs one through eighteen of Count One of the Indictment as if fully set forth herein.

2.    On or about the dates listed below, at Kansas City, in the Western District of Missouri, and elsewhere, in furtherance of the conspiracy and scheme to defraud set forth in Count One and for the purpose of executing the aforesaid scheme, the defendants listed below knowingly and willfully caused to be transmitted by means of wire communication in interstate commerce, between the Western District of Missouri and locations outside the State of Missouri, writings, signs, and signals, as described below, to obtain and fund loans to purchase the listed properties, which

32

loans were made in reliance on the false and fraudulent material representations and omissions by

defendants in execution of such scheme:

| COUNT | DEFENDANTS | PROPERTY PURCHASED | DATE | TRANSMISSION |
|---|---|---|---|---|
| 2 | TURNER, COLSON, and WILLIAMS | 3225 Thornbird, Independence, Missouri | 11/22/05 | Fax transmission of a commission statement submitted for Carole Colson Real Estate from 816-224-5605 to Nations Title in Kansas |
| 3 | TURNER, COLSON, and WILLIAMS | 3225 Thornbird, Independence, Missouri | 12/05/05 | Wire transfers of funds in the amounts of $467,672.22 and $118,057.31, caused by MILA from a bank outside Missouri, to US Bank, Kansas City, Missouri, for credit to the account of Nations Title |
| 4 | TURNER, COLSON, and WILLIAMS | 721 Lake Pointe Drive, Lee's Summit, Missouri | 11/18/05 | Fax transmission of the Residential Real Estate Sale Contract for 721 Lake Pointe Drive, Lee's Summit, Missouri, from Advahome in Kansas City, Missouri, to Nations Title in Kansas, 913-383-8255 |
| 5 | TURNER, COLSON, and WILLIAMS | 721 Lake Pointe Drive, Lee's Summit, Missouri | 12/21/05 | Fax transmission of a commission statement submitted for Carole Colson Real Estate, and an Irrevocable Demand for Payments to Cap One of $92,000 and $33,000, sent from 816-224-5605 to Nations Title in Kansas |
| 6 | TURNER, COLSON, and WILLIAMS | 721 Lake Pointe Drive, Lee's Summit, Missouri | 12/21/05 | Wire transfers of funds in the amounts of $611,390.10 and $152,705.94, caused by Fremont Investment and Loan from a bank outside Missouri, to US Bank, Kansas City, Missouri, for credit to the account of Nations Title |
| 7 | TURNER, COLSON, WILLIAMS, and NASH | 5111 and 5121 S. Brittany Drive, Blue Springs, Missouri | 12/22/05 | Email from J.H. in California to Williams in Missouri regarding employment information for letter for Nash |

Case 4:10-cr-00331-DGK   Document 1   Filed 11/19/10   Page 33 of 39

| Count | Defendants | Property Purchased | Date | Transmission |
|---|---|---|---|---|
| 8 | TURNER, COLSON, WILLIAMS, and NASH | 5111 S. Brittany Drive, Blue Springs, Missouri | 12/29/05 | Fax transmission of a commission statement submitted for Carole Colson Real Estate from 816-224-5605 to Nations Title in Kansas |
| 9 | TURNER, COLSON, WILLIAMS, and NASH | 5111 S. Brittany Drive, Blue Springs, Missouri, and | 12/29/05 | Wire transfers of funds in the amounts of $426,936.91 and $108,035.83, caused by MILA from a bank outside Missouri, to US Bank, Kansas City, Missouri, for credit to the account of Nations Title |
| 10 | TURNER, COLSON, WILLIAMS, and NASH | 5121 S. Brittany Drive, Blue Springs, Missouri, and | 01/12/06 | Fax transmission of a commission statement submitted for Carole Colson Real Estate, and Irrevocable Demands for Payments to San Kalpa Property Management of $100,000 and Alpha Omega Properties of $25,000, sent from Carole Colson Real Estate, 816-224-5605, to Nations Title in Kansas |
| 11 | TURNER, COLSON, WILLIAMS, and NASH | 5121 S. Brittany Drive, Blue Springs, Missouri, and | 01/12/06 | Wire transfers of funds in the amounts of $413,591.69 and $103,010.86, caused by Wilmington Finance, A Division of AIG, FSB, from a bank outside Missouri, to US Bank, Kansas City, Missouri, for credit to the account of Nations Title |
| 12 | TURNER, COLSON, WILLIAMS, and BILLEY | 721 NE Seabrook Circle, Lee's Summit, Missouri | 12/12/05 | Fax transmission of an Irrevocable Demand for Payment to Dream Homes of a total of $125,000, sent from Carole Colson Real Estate in Missouri to Nations Title in Kansas |
| 13 | TURNER, COLSON, WILLIAMS, and BILLEY | 721 NE Seabrook Circle, Lee's Summit, Missouri | 12/14/05 | Fax transmission of signed Residential Real Estate Sale Contract for Billey to purchase property and signed Cancellation and Mutual Release Agreement for J.H. to purchase property, sent from Carole Colson Real Estate at 816-224-5605 to J.H. in California |

34

| COUNT | DEFENDANTS | PROPERTY PURCHASED | DATE | TRANSMISSION |
|---|---|---|---|---|
| 14 | TURNER, COLSON, WILLIAMS, and BILLEY | 721 NE Seabrook Circle, Lee's Summit, Missouri | 01/12/06 | Fax transmission of a commission statement submitted for Carole Colson Real Estate from 816-224-5605 to Nations Title in Kansas |
| 15 | TURNER, COLSON, WILLIAMS, and BILLEY | 721 NE Seabrook Circle, Lee's Summit, Missouri | 01/13/06 | Fax transmission of earnest money check and pages of loan applications, sent by Williams at Advahome, Kansas City, Missouri, to Nations Title in Kansas |
| 16 | TURNER, COLSON, and WILLIAMS | 1510 Timber Ridge, Liberty, Missouri | 02/06/06 | Fax transmission of Irrevocable Demands for Payment to Cap One Risk and Dream Homes Management, and commission worksheet, sent from Carole Colson Real Estate, 816-224-5605, to Nations Title in Kansas |
| 17 | TURNER, COLSON, and WILLIAMS | 1510 Timber Ridge, Liberty, Missouri | 02/06/06 | Wire transfers of funds in the amounts of $544,465.45 and $135,785.83, caused by Long Beach Mortgage from a bank outside Missouri, to US Bank, Kansas City, Missouri, for credit to the account of Nations Title |
| 18 | TURNER and WILLIAMS | 708 NE Dick Howser Ct., Lee's Summit, Missouri | 01/11/06 | Fax transmission of Residential Real Estate Contract, sent from Carole Colson Real Estate at 816-457-6333 to Capital Title at 913-747-3040 |
| 19 | TURNER and WILLIAMS | 708 NE Dick Howser Ct., Lee's Summit, Missouri | 02/07/06 | Wire transfers of funds in the amounts of $794,513.55 and $198,456.10, caused by Meritage Mortgage from a bank outside Missouri, to Blue Bank and Trust, Kansas City, Missouri, for credit to the account of Capital Title |
| 20 | TURNER, HICKS, and JACKSON | 1013 SW Trail Ridge Lane, Lee's Summit, Missouri | 02/28/06 | Fax transmission of Residential Real Estate Sale Contract, sent from Infinity Realty, 816-554-6351, to Nations Title in Kansas |

Case 4:10-cr-00331-DGK   Document 1   Filed 11/19/10   Page 35 of 39

| Count | Defendants | Property Purchased | Date | Transmission |
|---|---|---|---|---|
| 21 | TURNER, HICKS, and JACKSON | 1013 SW Trail Ridge Lane, Lee's Summit, Missouri | 02/28/06 | Fax transmission of information worksheet and Commission Statement, sent from 816-554-6351 to Nations Title in Kansas |
| 22 | TURNER, HICKS, and JACKSON | 1013 SW Trail Ridge Lane, Lee's Summit, Missouri | 03/01/06 | Email from Hicks to J.H. regarding employment letter for M.J. |
| 23 | TURNER and NSHANIAN | 4231 NE Edmonson Court, Lee's Summit, Missouri | 04/10/06 | Fax transmission of a Residential Real Estate Sale Contract for $750,000, signed by sellers and buyer, and Irrevocable Letters for Payment to A and M Management and Alpha/Omega Properties, sent from 816-985-8448 to Capital Title, Kansas |
| 24 | TURNER and NSHANIAN | 4231 NE Edmonson Court, Lee's Summit, Missouri | 04/14/06 | Fax transmission of Commission Letter and Irrevocable Letters for Payment to A and M Management and Alpha/Omega Properties, sent from 816-985-8448 to Capital Title, Kansas |
| 25 | TURNER and HICKS | 4300 NE Hoit Drive, Lee's Summit, Missouri | 03/21/06 | Email from Turner in Missouri to J.H. with pictures of property |
| 26 | TURNER and HICKS | 4300 NE Hoit Drive, Lee's Summit, Missouri | 04/07/06 | Fax transmission of Borrower's Certification and Authorization sent from 816-734-4240 to Fremont Investment and Loan, California |
| 27 | TURNER and HICKS | 4300 NE Hoit Drive, Lee's Summit, Missouri | 04/28/06 | Wire transfers of funds in the amounts of $526,361.07 and $129,583.19 caused by Fremont Investment and Loan from a bank outside Missouri to US Bank, Kansas City, Missouri, for credit to the account of Nations Title |

| COUNT | DEFENDANTS | PROPERTY PURCHASED | DATE | TRANSMISSION |
|---|---|---|---|---|
| 28 | TURNER and JOHNSON | 1813 SW Summit Valley Drive, Lee's Summit, Missouri | 03/01/06 | Fax transmission of an unsigned contract for Johnson to purchase the property, sent from Turner at 816-554-6351 to J.H. in California |
| 29 | TURNER and JOHNSON | 1813 SW Summit Valley Drive, Lee's Summit, Missouri | 03/30/06 | Fax transmission of a signed Residential Real Estate Contract for Johnson to purchase the property, sent from Infinity Realty at 816-554-6351 to Capital Title in Kansas |
| 30 | TURNER and JOHNSON | 1813 SW Summit Valley Drive, Lee's Summit, Missouri | 04/04/06 | Fax transmission of a Commission Statement, sent from Infinity Realty in Missouri to Capital Title in Kansas |
| 31 | TURNER and JOHNSON | 1813 SW Summit Valley Drive, Lee's Summit, Missouri | 04/24/06 | Fax transmission of loan documents, sent from Hicks in Missouri to J.H. in California |
| 32 | TURNER and JOHNSON | 1813 SW Summit Valley Drive, Lee's Summit, Missouri | 04/25/06 | Fax transmission of Irrevocable Letter for Payment to Ritam Property Management, sent from Missouri to Capital Title in Kansas |
| 33 | COLSON and BILLEY | 2801 S Fields Road, Oak Grove, Missouri | 04/06/06 | Email of pictures of the property, sent from Colson in Missouri to J.H. in California |

Case 4:10-cr-00331-DGK   Document 1   Filed 11/19/10   Page 37 of 39

| COUNT | DEFENDANTS | PROPERTY PURCHASED | DATE | TRANSMISSION |
|---|---|---|---|---|
| 34 | COLSON and BILLEY | 2801 S Fields Road, Oak Grove, Missouri | 08/04/06 | Wire transfers of funds from Commerce Bank, Missouri, account of First American Title: $90,000, to Bank of America for deposit to the account of Trident Acquisition Management, California; and $35,000 to Bank of the West for deposit to the account of Dream Home Management, California |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THIRTY-FIVE

1.     The Grand Jury incorporates by reference paragraphs one through eighteen of Count One of the Indictment as if fully set forth herein.

2.     On or about December 5, 2005, at Kansas City, in the Western District of Missouri, and elsewhere, defendant LEANN RAEJEANA TURNER, a/k/a LEANN R. Turner, hereafter TURNER, did knowingly engage in, and cause to be engaged in, a monetary transaction, in or affecting interstate commerce, in criminally derived property of a value greater than $10,000.00, the funds represented by said withdrawal and transfer having been derived from a specified unlawful activity, that is, wire fraud, and TURNER knew said monetary transaction involved proceeds of a criminal offense, all as described below.

a.     On or about December 5, 2005, in connection with the sale and purchase of 3225 Thornbird, Blue Springs, Missouri, as described in Count One, defendant TURNER caused a wire transfer to be made for $52,000 from Nations Title Agency to Commerce Bank, in reference to an Irrevocable Demand for Payment to Dream Homes Management which she submitted.

38

b.      On or about December 7, 2005, Commerce Bank credited the account of Dream Homes Management LLC, an account used by defendant TURNER but in the name of K.A., with the $52,000 sent by wire from Nations Title Agency.

c.      On or about December 7, 2005, after the Dream Homes Management account had been credited with the $52,000, defendant TURNER caused a cashier's check to be issued in the amount of $23,197.00 drawn on the account.

All in violation of Title 18, United States Code, Sections 1957 and 2.

A TRUE BILL.


 11/18/10                                             /s/ Micheal R. Bailey
DATE                                      FOREPERSON OF THE GRAND JURY


 /s/ Linda Parker Marshall
Linda Parker Marshall
Senior Litigation Counsel
United States Attorneys Office

39